**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| CASSIE D.,[1]                        ) | |
|                                      ) | |
| *Plaintiff,*                         ) | |
|                                      ) | |
| v.                                   ) | Civil No. 3:22-cv-659-DJN-SLS |
|                                      ) | |
| MARTIN O'MALLEY,                     ) | |
| Commissioner of the                  ) | |
| Social Security Administration,[2]   ) | |
|                                      ) | |
| *Defendant.*                         ) | |
| _____    ) | |

## REPORT AND RECOMMENDATION

In this action, Plaintiff Cassie D. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 16, 20.) The motions have been fully briefed (ECF Nos. 16, 17, 20, 21), rendering this matter ripe for review.

Plaintiff requests that the Court reverse the Commissioner's decision and order immediate payment of benefits, or in the alternative, that the Commissioner's decision be vacated and remanded for further administrative proceedings, including a *de novo* hearing and new decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

(Plaintiff's Brief in Support of Motion for Summary Judgment (ECF No. 17) ("Pl.'s Mem.") at 12.)  As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because he erroneously omitted an absenteeism limitation, rendering the residual functional capacity ("RFC") determination improper.  (Pl.'s Mem. at 7-11.)  The Commissioner argues that the ALJ adequately explained why he did not include an absenteeism limitation in the RFC determination, substantial evidence supports the RFC determination, and therefore the ALJ's decision should be affirmed.  (Defendant's Motion for Summary Judgment and Brief in Support (ECF No. 20) ("Def.'s Mem.") at 17-23.)

For the reasons below, this Court finds that the ALJ properly considered the evidence in accordance with the regulations and that substantial evidence supports the ALJ's RFC findings. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and SSI on October 18, 2019. (Administrative Record ("R.") at 12, 70.)[3]  Plaintiff alleged disability beginning on July 17, 2019, claiming she suffered from depression, anxiety, and schizophrenia.  (R. at 70, 84, 230.)  On March 11, 2020, the SSA found that Plaintiff was not disabled and denied her applications.  (R. at 97.) On June 4, 2020, the SSA reaffirmed these findings, denying Plaintiff's claims again on

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

reconsideration.  (R. at 127-28.)  Plaintiff requested a hearing before an ALJ, and one was held on February 24, 2022.  (R. at 32-56, 154-55.)

On April 25, 2022, the ALJ issued a written decision, finding that Plaintiff was not disabled under the Social Security Act ("the Act").  (R. at 12-25.)  On August 17, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1, 226-28.)  Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c).

## II.  STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his [or her] physical or mental impairment[s] are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . .." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).  At step one, the ALJ must review the claimant's current work to determine if he or she has been participating in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the

regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* §§ 404.1545(a), 416.925(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given his or her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence is evidence that a reasonable mind could accept as adequate to support a conclusion; it requires more than a mere scintilla of evidence but less than a preponderance of the evidence. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke*

*v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 13.)  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since July 17, 2019, the alleged disability onset date.  (R. at. 14.)  At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: schizoaffective disorder, posttraumatic stress disorder, anxiety disorder, and substance use disorder.  (R. at 15.)

At step three, the ALJ determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled one of the listings in 20 C.F.R. Part 404, Subpart P,

Appendix 1, including "the criteria of listings 12.04, 12.06, 12.08, and 12.15." (R. at 15.)  In making this finding, the ALJ first considered whether Plaintiff satisfied "paragraph B" criteria. (R. at 15.)  To satisfy "paragraph B" criteria, Plaintiff must have either one extreme limitation or two marked limitations in the four areas of mental functioning used in a work setting. (R. at 15.) *See also* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).[4]  Instead of finding marked or extreme limitations in these four areas, the ALJ found a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. at 15-16.)

The ALJ supported these conclusions by pointing to evidence from December 2019, January 2021, and December 2021 that showed that Plaintiff: (1) had goal-directed thought processes and normal thought content; (2) exhibited normal judgment, memory, concentration, insight, speech, and behavior; (3) had either adequate or normal funds of knowledge; (4) was cooperative, alert, and oriented; and (5) displayed good hygiene and grooming. (R. at 15-16.) These records also showed that Plaintiff described her mood as both "fine" and "better" at different mental status examinations and that her affect was reported at one examination to be "bright and congruent." (R. at 16.)  The ALJ acknowledged Plaintiff's daily activities of living, including her ability to shop, use her smartphone, clean, do laundry, take care of her children, "make simple meals, use public transportation, pay bills, count change and use a checkbook." (R. at 15-16.)  In

---

[4] The SSA evaluates the effects of a mental disorder on four areas of mental functioning based on a five-point rating scale. 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2). "An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis" in an area. (R. at 15.) *See also* C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(e). A marked limitation exists when an impairment seriously limits the ability to do the same. (R. at 15.) *See also* 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(d). Moderate indicates a fair limitation, mild includes a slight limitation, and "no" or "none" means the claimant can function in the area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subp. P, App. 1, § 12.00(F)(2)(a)-(c).

addition, the ALJ considered that Plaintiff had custody of her three kids Mondays through Fridays, was meeting with a vocational coach, could go shopping with a friend, and used employment services, public transportation, and social media. (R. at 16.) Because the ALJ found mild and moderate limitations, but not extreme or marked limitations, he concluded that Plaintiff did not satisfy the "paragraph B" criteria. (R. at 15-16.)

Before proceeding to step four, the ALJ determined Plaintiff's RFC. (R. at 17-23.) Based on the evidence in the record, the ALJ found that Plaintiff retained the ability to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Plaintiff] can perform simple, routine tasks, with no production rate for pace of work (e.g., assembly-line work). [Plaintiff] can tolerate occasional interaction with coworkers and supervisors. [Plaintiff] can maintain attention and concentration for a 2-hour period before requiring a 15-minute break throughout the workday.

(R. at 17.) The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. at 17.)

The ALJ began with Plaintiff's symptoms. He first acknowledged Plaintiff's testimony about her symptoms and resulting limitations, which she said included "hallucinations, social isolation, [an] inability to leave [the] house alone, nervousness, anxiousness, concentration loss, self-harm, memory problems, sleep disturbance, depression, and crying spells." (R. at 17.) The ALJ also considered Plaintiff's function report which outlined additional symptoms including poor comprehension, poor ability to follow instructions, the inability to handle stress or changes in routine, and deficiencies in her daily activities evidenced by her staying in bed and not eating. (R. at 17.)

7

The ALJ acknowledged that Plaintiff's impairments could reasonably be expected to cause these alleged symptoms.  (R. at 17-18.)  However, the ALJ also found the claimed intensity, persistence, and limiting effects of these symptoms to be inconsistent with the evidence in the record.  (R. at 18.)  Specifically, the ALJ concluded that Plaintiff's treatment history, clinical findings, and activities of daily living did not support the severity of her allegations.  (R. at 18-19.)  Instead, they supported the RFC determination above—that Plaintiff would be limited to unskilled, non-production rate work with limitations on social interaction and attention and concentration.  (R. at 18-19.)

The ALJ next summarized Plaintiff's treatment records in detail to support his RFC finding.  (R. at 18-23.)  While recognizing Plaintiff's long-term therapy, case management, and medication management, the ALJ found that Plaintiff showed good improvement over time from medication and therapy.  (R. at 18.)  The ALJ noted that Plaintiff's symptoms were exacerbated by situational stressors, such as break-ups with a boyfriend or child custody issues, but otherwise could be controlled.  (R. at 18.)  Plaintiff reported that her medication worked to improve symptoms without side effects and that she wanted to remain on medication.  (R. at 18.)  She showed signs of improvement after both being in a crisis care facility for a week and following a 30-day sobriety program.  (R. at 18.)  By the end of 2019 and into 2020, Plaintiff reported feeling "much nicer and happier," experiencing improved attention and concentration, "good sleep," and a better mood and motivation.  (R. at 18.)  By June 2021, Plaintiff reported that she was "doing much better."  (R. at 18.)  Although she relapsed on her alcohol sobriety after a break-up with her boyfriend, Plaintiff denied urges to harm herself, hallucinations, or delusions.  (R. at 18.)  She reported that medication controlled her anxiety and denied panic attacks, but still exhibited depressive symptoms.  (R. at 18.)

As for clinical findings, Plaintiff consistently showed normal behaviors at her mental status examinations in December 2019 and throughout 2020 and 2021, including having good hygiene and grooming; exhibiting normal speech, judgment, insight, memory, and concentration; showing goal directed thought process, normal thought content, and an adequate fund of knowledge; acting cooperative, alert, and oriented; and describing a better or fine mood with a bright and congruent affect.  (R. at 18-19.)

Regarding her activities of daily living, the ALJ noted that Plaintiff was able to care for her three children.  (R. at 19.)  Although she cared for them only on the weekends at the beginning of the review period, Plaintiff fought for fully custody and received custody for her children from Monday through Friday.  (R. at 19.)  Plaintiff also met with a vocational coach and used other employment services in late 2020 and early 2021.  (R. at 19.)  Although Plaintiff testified to some deficiencies in her activities, she also reported being able to pray, clean the house, complete household chores, apply her makeup and style her hair, go shopping with a friend, play games on her phone, use social media, cook simple meals, use public transportation, pay bills, and manage a checkbook.  (R. at 19.)

The ALJ next considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c.  (R. at 17, 19-22.)  The ALJ began by considering the 2018 medical opinion of Jeevan Puthiamadathil, M.D. ("Dr. Puthiamadathil"), a consultative examiner.  (R. at 19-20.)  In the psychological portion of the exam, Dr. Puthiamadathil found that Plaintiff has communicative limitations and workplace environmental limitations due to major depressive disorder and generalized anxiety disorder.  (R. at 20.)  The ALJ found this portion of Dr. Puthiamadathil's opinion unpersuasive because it was too vague for review, was authored before the alleged onset date, relied on a cursory mental status

examination, and was inconsistent with Plaintiff's normal ability to interact with providers. (R. at 20.)

The ALJ next considered the October 2018 medical opinion of Charla White, Psy.D. ("Dr. White"), a consultative examiner. (R. at 20.) Dr. White found that Plaintiff had no impairment in her ability to follow complex directions but had a mild to moderate impairment in her ability to complete tasks in a timely manner due to issues with focus and concentration. (R. at 20.) Dr. White reported that Plaintiff was not comfortable interacting with others, causing her to be irritable, short tempered, avoidant, and self-isolating. (R. at 20.) Dr. White opined that frequent absenteeism should be expected because of Plaintiff's hopelessness and apathy. (R. at 20.) The ALJ found this opinion partially persuasive. The ALJ noted that Dr. White supported her opinion by conducting a mental status examination and reviewing records that predated the alleged onset date. (R. at 20.) The ALJ found the opined mild to moderate impairments regarding focus and concentration consistent with mental status examinations and Plaintiff's improvements following treatment. (R. at 20.) However, the ALJ found Dr. White's opinion regarding Plaintiff's ability to interact with others unpersuasive and overly vague. (R. at 20.) In addition, the ALJ found the absenteeism limitation unpersuasive because it was inconsistent with Plaintiff's "improvement with treatment, normal mental status examinations of record, and robust activities of daily living," as well as the medical opinions of Andrew Bockner, M.D. ("Dr. Bockner") and Leslie Montgomery, Ph.D. ("Dr. Montgomery"), which the ALJ opined were better supported by a review of temporally relevant material. (R. at 20 (internal record citations omitted).)

The ALJ then considered the October 2018 opinion of Stephen P. Saxby, Ph.D. ("Dr. Saxby"), a state agency psychological consultant. Dr. Saxby found that Plaintiff had (1) a mild limitation in "understanding, remembering or applying information"; (2) a moderate limitation in

"concentrating, persisting or maintaining pace"; and (3) a moderate limitation in "adapting or managing oneself." (R. at 20.) He further found that Plaintiff would be limited to tasks that require some independent judgment, could interact with the public to deliver low-level personal services, and could perform simple routine tasks. (R. at 20.) Although the ALJ concluded this opinion was "not well supported" because Dr. Saxby reviewed records predating the alleged onset date, the ALJ found it consistent with Plaintiff's improvement following treatment, normal examinations, and activities of daily living. (R. at 20.) Therefore, the ALJ found this opinion persuasive. (R. at 20.)

Next, the ALJ considered the March 2020 opinion of Dr. Bockner, a state agency psychological consultant. (R. at 21.) Dr. Bockner opined that Plaintiff had moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace and had mild limitations in interacting with others and adapting and managing oneself. (R. at 21.) He further reported that Plaintiff could maintain attention and concentration for two-hour periods and should have performance-based, rather than production-based, duties. (R. at 21.) He acknowledged that Plaintiff "may have problems with attendance, but would not have day to day interruptions from psychological symptoms." (R. at 21.) The ALJ found the opinion of Dr. Bockner mostly persuasive. (R. at 21.) The ALJ determined that the opinion was supported by a review of the evidence, but contained some inconsistencies. (R. at 21.) Specifically, the ALJ found that Dr. Bockner's opinion originally stated that Plaintiff had a mild limitation in interacting with others, but then indicated a limitation for only "occasional interaction with the public which is representative of moderate limitation." (R. at 21.) Furthermore, the ALJ found the absenteeism limitation unpersuasive. (R. at 21.) As an initial matter, the ALJ concluded that Dr. Bockner's statement that Plaintiff "may have problems with attendance" was "too vague"

11

and "too equivocal" for review.  (R. at 21.)  The ALJ found this absenteeism limitation inconsistent with the record which shows Plaintiff's "normal ability to interact with treatment providers, her robust activities of daily living and her normal mental status examinations."  (R. at 21 (internal record citations omitted).)

Additionally, the ALJ considered the June 2020 opinion of Dr. Montgomery, a state agency psychological consultant.  (R. at 21.)  Dr. Montgomery found that Plaintiff had (1) a mild limitation in "understanding, remembering or applying information"; (2) a moderate limitation in "interacting with others"; (3) a moderate limitation in "concentrating, persisting or maintaining pace"; and (4) a moderate limitation in "adapting or managing oneself."  (R. at 21.)  She further found that Plaintiff had the capacity to concentrate, occasionally interact with others, and adapt to changes in the workplace.  (R. at 21.)  The ALJ found Dr. Montgomery's opinion mostly persuasive because it was supported by a review of the evidence, and consistent with Plaintiff's positive response to treatment, normal mental status examinations, other opinions, and robust activities of daily living.  (R. at 21.)

Finally, the ALJ considered the opinions of Cynthia Miller, L.P.C. ("LPC Miller").  (R. at 20-22.)  The ALJ considered LPC Miller's (1) February 2020 joint opinion with Maria Coica, M.D. ("Dr. Coica"); (2) December 2021 individual opinion; and (3) February 2022 individual opinion.  (R. at 20-22.)  The February 2020 joint opinion found Plaintiff unable to understand complex concepts and stated that Plaintiff had significant deterioration when she was under work-related stress.  (R. at 20.)  The ALJ found this opinion not persuasive because it was unsupported by treatment notes, which did "not evince this level of dysfunction," and was inconsistent with Plaintiff's treatment records, normal mental status examinations, and daily activities, as well as other medical opinions.  (R. at 20.)

The December 2021 individual opinion found that Plaintiff had moderate limitations in following work rules; using judgment; functioning independently; understanding, remembering, and applying information to simple work activities; interacting with others; concentrating, persisting, or maintaining pace; and maintaining personal appearance. (R. at 21-22.) This opinion also found that Plaintiff had marked limitations in making occupational adjustments; understanding, remembering, and applying information to complex work activities; adapting or managing oneself; behaving in an emotionally stable manner; acting predictably in social situations; and demonstrating reliability. (R. at 21-22.) Further, LPC Miller stated that Plaintiff would be absent three or more times per month. (R. at 22.) The ALJ did not find this opinion persuasive. (R. at 22.) The ALJ noted it was unsupported because it failed to appropriately cite to medical findings or any narrative underpinning the determinations contained within, despite the form specifically requesting that this be done. (R. at 22.) The ALJ also found the opinion inconsistent, both internally and with other record evidence, explaining:

> For example, [LPC Miller] found moderate limitation in interacting with others, but marked limitation in behaving in an emotionally stable manner, marked limitation in acting predictably in social situations, marked limitation in dealing with the public, and marked limitation in relating to coworkers. It is inconsistent with a mental status examination that was conducted three week[s] later which found [Plaintiff] was cooperative with normal behavior, normal speech, normal mood, normal thought processes, normal thought content, normal insight, normal judgment, normal orientation, normal alertness, normal memory, normal concentration, and normal fund of knowledge. Overall, it is inconsistent with [Plaintiff's] good response to treatment, other normal mental status examinations occurring throughout the record, [other medical] opinions, and robust activities of daily living.

(R. at 22 (internal record citations omitted).)

In her February 2022 individual opinion, LPC Miller found that Plaintiff had marked limitations in understanding, remembering, and applying information; social functioning; concentration, persistence, or pace; and adapting or managing oneself. (R. at 22.) She also found

that Plaintiff had: "schizophrenic paranoid or psychotic disorder that causes repeated episodes of decompensation"; a residual disease process which predicts that even a minimal increase in mental demands or a minimal change in the environment would cause the individual to decompensate; an inability to function outside of a highly supportive living arrangement; and recurring instances of an inability to attend work because of "depression[,] anxiety[,] or other mental health manifestations." (R. at 22.) The ALJ also found this opinion unpersuasive. (R. at 22.) Again, the ALJ found that it lacked support due to a failure to appropriately cite to any narrative underpinning the determinations. (R. at 22.) In addition, the ALJ found it inconsistent with LPC Miller's December 2021 opinion and with medical records that showed Plaintiff's good response to treatment, normal examinations, and ability to adapt to repeated changes in her environment. (R. at 22.)

In summary, the ALJ found that "based upon the totality of the evidence, including the objective findings, [Plaintiff's] course of treatment, and [her] activities of daily living…, and in considering the statements and testimony of [Plaintiff] regarding [her] subjective complaints and functional limitations…that [Plaintiff's] impairments and restrictions caused by them would not prevent [Plaintiff] from performing the [RFC] set forth above." (R. at 22-23.)

After completing the RFC assessment, the ALJ determined Plaintiff's vocational factors, including her age, education, and work experience. (R. at 23.) He found that Plaintiff was unable to perform her past relevant work (namely, as a sorter pricer, store laborer, and hair stylist) and had a limited education. (R. at 23.) Further, the ALJ found that Plaintiff met the definition of a younger individual age 18-49. (R. at 23.) At step five, after considering Plaintiff's age, education, work experience, and RFC, the vocational expert testified that Plaintiff would be able to perform three jobs: (1) furniture cleaner – which has 70,000 jobs in the national economy; (2) floor waxer

– which has 60,000 jobs in the national economy; and (3) garment bagger – which has 50,000 jobs in the national economy.  (R. at 24.)  The ALJ adopted the vocational expert's testimony and concluded that Plaintiff could make "a successful adjustment to other work that exists in significant numbers in the national economy."  (R. at 24.)  The ALJ therefore found Plaintiff not disabled from July 17, 2019 (the alleged onset date) through April 25, 2022 (the date of the decision).  (R. at 25.)

## IV.    ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence.  *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340).  "In reviewing for substantial evidence, [the court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001).  Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a de novo review of the record.  *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons discussed below, the Court finds that the ALJ properly considered Plaintiff's attendance issues, assessed the record and medical opinion evidence in accordance with the regulations, and made findings supported by substantial evidence.

**A. The ALJ Reasonably Concluded that Plaintiff's Attendance Issues Did Not Warrant an Absenteeism Limitation, and Substantial Evidence Supports His Finding**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because it omits any absenteeism limitation.  (Pl.'s Mem. at 7.)  Specifically, Plaintiff asserts that "the overwhelming evidence of record points to [Plaintiff] having attendance issues." (Pl.'s Mem. at 7.)  The Court concludes that the ALJ considered all relevant evidence and medical opinions in making the RFC determination as required by applicable legal standards and that substantial evidence supports the ALJ's decision not to include an absenteeism limitation in the RFC.

The RFC is the most Plaintiff can still do despite her limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In determining Plaintiff's RFC, the ALJ must consider all "medically determinable impairments" including those that are not severe.  *Id.* §§ 404.1545(a)(2), 416.945(a)(2).  The ALJ must also consider all relevant medical evidence, all other evidence, and must fully develop Plaintiff's complete medical history before making a finding.  *Id.* §§ 404.1545(a)(3), 416.945(a)(3).  As outlined above in Part III, the ALJ complied with these legal requirements.  *See supra* Part III.

The ALJ acknowledged Plaintiff's testimony and other reports of her symptoms, including her alleged inability to handle stress, get out of bed, and leave the house and her alleged hallucinations, depression, and crying spells.  (R. at 17-18.)  However, the ALJ found the record evidence, including Plaintiff's treatment history, clinical findings in mental status examinations, and reported activities of daily living, to be inconsistent with Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms.  (R. at 18.)

As discussed above, the ALJ's decision detailed these three categories of evidence, including a thorough explanation of how they supported the ultimate RFC determination. *See supra* Part III. The ALJ found that Plaintiff's symptoms had improved with treatment, specifically medication and therapy. (R. at 18.) At various times through the period in review, Plaintiff reported being "nicer and happier," and experiencing "improved attention and concentration," "good sleep," a "better mood," and "better motivation." (R. at 18.) Plaintiff also denied hallucinations, delusions, and panic attacks, and reported that medication controlled her anxiety, although she continued to exhibit depressive symptoms. (R. at 18.)

The ALJ next detailed Plaintiff's normal mental status examinations. He began by outlining Plaintiff's December 2019 mental status examination, which noted Plaintiff's good hygiene and grooming; normal behavior, speech, judgment, memory, concentration, and thought content; adequate fund of knowledge; goal directed thought processes; lack of homicidal or suicidal ideations; and alert and oriented behaviors. (R. at 18.) The ALJ then outlined Plaintiff's 2020 and 2021 mental status examinations, finding those to be "normal." (R. at 18-19.) The ALJ explained that Plaintiff presented as cooperative and with a better mood at her exams. (R. at 18-19.) The treatment records also reflected that she presented with normal speech, judgment, memory, concentration, funds of knowledge, thought content, insight, and behavior. (R. at 18-19.)

The ALJ then explained Plaintiff's robust activities of daily living. He noted that Plaintiff was raising three children; met with a vocational coach and utilized employment services during the period of review; kept the house clean; cared for personal hygiene tasks, including putting on her makeup and styling her hair each day; could go shopping with a friend; played games on her

phone; used social media; made simple meals; completed household chores, such as laundry and ironing; used public transportation; paid bills; and managed a checkbook.  (R. at 19.)

The ALJ concluded that the treatment history, the mental status examinations, and Plaintiff's activities of daily living did not support the severity of Plaintiff's symptoms as alleged and instead supported the RFC determination of unskilled, non-production rate work with limitations related to social interactions and attention and concentration.  (R. at 18-19.)  While Plaintiff identifies record evidence which could support additional limitations (Pl.'s Mem. at 8-10), substantial evidence supports the ALJ's determination, and the ALJ complied with applicable legal standards in conducting the RFC determination.  Therefore, the Court's declines to reweigh the conflicting evidence identified by Plaintiff.  *See Hancock*, 667 F.3d at 472.  The Court finds no basis for remand on this alleged point of error.

### B. The ALJ Applied Correct Legal Standards in Evaluating the Medical Opinions, and Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff also argues that the ALJ erred in rejecting absenteeism limitations contained in various medical opinions.  (Pl.'s Mem. at 7.)  Specifically, Plaintiff contends that the ALJ viewed the medical opinion evidence "in a vacuum," rather than as a whole, by improperly discrediting four medical opinions with absenteeism limitations as inconsistent with the record and failing to reconcile the fact that they were consistent with one another.  (Pl.'s Mem. at 7; Plaintiff's Reply in Support of Motion for Summary Judgment (ECF No. 21) ("Pl.'s Reply") at 2.)  Although Plaintiff acknowledges that the ALJ did address absenteeism, she contends the ALJ made non-specific, boilerplate findings that do not clearly explain why an absenteeism limitation was inappropriate.  (Pl.'s Mem. at 10; Pl.'s Reply at 2.)  According to Plaintiff, this makes it

"impossible to trace the path of the ALJ's reasoning" because there is no logical bridge between the evidence and the ALJ's conclusions.  (Pl.'s Mem. at 10-11.)

As discussed below, the Court concludes that the ALJ applied correct legal standards in evaluating the various medical opinions, that the ALJ properly explained his assessment of the same, including rejections of proposed absenteeism limitations, and that substantial evidence supports the RFC finding.

### 1.   Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.  This framework applies in Plaintiff's case.  (Pl.'s Mem. at 1; R. at 12.)  The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ."  *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source.  20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements.  *Id*. §§ 404.1520c, 416.920c(b)-(c).  Supportability and consistency are the "most important" factors, and the ALJ must discuss

how these factors were considered in the written opinion.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  The ALJ may, but is not required to, explain how the other factors were considered.  *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

> ## 2. The ALJ's Analysis of the Various Medical Opinions Pertaining to Absenteeism Limitations Was Proper

The ALJ assessed multiple medical opinions in his opinion.  Although several medical reports recommended some form of absenteeism limitation, two did not.  After weighing these various opinions, including considering the factors of supportability and consistency, the ALJ found an absenteeism limitation not persuasive.  In making this finding, the ALJ applied correct legal standards, and substantial evidence supports his findings.

Dr. White opined in October 2018 that "[f]requent absenteeism is to be expected" because of Plaintiff's "mental health symptoms of hopelessness and apathy."  (R. at 20, 438.)  The ALJ did not find this portion of Dr. White's opinion persuasive.  (R. at 20.)  While he noted that the opinion was supported by a mental status examination, he found that Dr. White's "review of records . . . occurred prior to the alleged onset date."  (R. at 20.)  Thus, the ALJ rejected the frequent absenteeism limitation as inconsistent with Plaintiff's "improvement with treatment, normal mental status examinations of record, and robust activities of daily living."  (R. at 20.)  The ALJ also found a frequent absenteeism limitation "inconsistent with the opinions of Dr. Bockner and

Dr. Montgomery, whose opinions are better supported by a review of temporally relevant material." (R. at 20 (internal record citations omitted).) Compared to this frequent absenteeism limitation, Dr. Bockner had opined that Plaintiff "may have problems with attendance, but would not have day to day interruptions from psychological symptoms," and Dr. Montgomery did not recommend any absenteeism limitations. (R. at 21.)

In the February 2020 report, LPC Miller and Dr. Coica noted that Plaintiff exhibited "significant deterioration of adaptive behaviors under stress of daily work-related or work stress." (R. at 20.)[5] The ALJ found this opinion not persuasive. (R. at 20.) Regarding supportability, the ALJ concluded that the report was not well supported because treatment notes did not evince the level of dysfunction contained in the report. (R. at 20.) Regarding consistency, the ALJ determined the report was inconsistent with Plaintiff's "improvement with treatment, normal mental status examinations of record, and robust activities of daily living," and inconsistent with the opinions of Dr. Saxby, Dr. Bockner, and Dr. Montgomery. (R. at 20-21.)

---

[5] Plaintiff asserts that the ALJ "did not acknowledge that Dr. Coica provided any concerns about [Plaintiff's] ability to maintain regular attendance in the work place." (Pl.'s Mem. at 10.) Specifically, LPC Miller and Dr. Coica noted on the report that Plaintiff "ha[d] been unable to sustain job requirements of tasks and attendance due to symptoms and illness" when asked to discuss Plaintiff's "[p]erformance on previous jobs." (R. at 674.) As an initial matter, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision…." *Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). In any event, while the ALJ did not expressly discuss this summary of Plaintiff's performance on prior jobs, he did discuss LPC Miller and Dr. Coica's statements regarding Plaintiff's impairment-related limitations. (R. at 20.) He then found the remainder of the report constituted a mental status examination, rather than a medical opinion. (R. at 20.) *See also* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). He found LPC Miller and Dr. Coica's opinion unpersuasive, as it was not well supported by treatment notes and was inconsistent with Plaintiff's improvement with treatment, normal mental status exams, and reported activities of daily living. (R. at 20.) The ALJ clearly analyzed this opinion and found it unpersuasive for multiple reasons. This did not constitute error.

Dr. Bockner's March 2020 opinion stated that Plaintiff "has maintained full time work" in the past, "although for short periods," and "may" have attendance problems but "would not have day to day interruptions from psychological symptoms." (R. at 21, 80.) The ALJ found this opinion mostly persuasive but rejected any absenteeism limitation. (R. at 21.) The ALJ noted that the opinion was well supported by a review of the evidence. (R. at 21.) But the ALJ found any absenteeism limitation inconsistent with the record, Plaintiff's "robust activities of daily living[,] and her normal mental status examinations." (R. at 21.) In addition, the ALJ found the opinion "too vague for review" because it equivocally stated that Plaintiff "may" have attendance issues but failed to define the extent of any such "problems with attendance." (R. at 21.)

LPC Miller, in her December 2021 evaluation, stated that Plaintiff would be absent more than three times per month. (R. at 22, 1363.) In her February 2022 opinion, LPC Miller also checked "yes" when asked if Plaintiff suffered from "recurrent instances of inability to attend work as a result of limitations imposed by depression, anxiety, or other mental health manifestations." (R. at 22, 1365.) She failed to include an estimation of how often this would occur in the space provided for such response, but described the manifestations as "psychosis, paranoia, AH." (R. at 1365.) The ALJ found these opinions not persuasive, as they were unsupported given the lack of reference to medical findings or narrative underpinnings, internally inconsistent with LPC Miller's other findings, and "inconsistent with the [Plaintiff's] good response to treatment, other normal mental status examinations occurring throughout the record, DDS opinions, and robust activities of daily living." (R. at 22 (internal record citations omitted).)

Dr. Saxby's October 2018 opinion, which the ALJ found persuasive, did not include any absenteeism limitation. (R. at 20.) Dr. Montgomery's June 2020 opinion similarly did not include any absenteeism limitation, and the ALJ found that opinion mostly persuasive. (R. at 21.)

22

Ultimately, the ALJ found the record evidence during the period of review inconsistent with an absenteeism limitation.  In rejecting portions of the medical opinions which included such a limitation, the ALJ properly assessed those opinions' supportability and consistency under applicable legal standards.  In addition, the ALJ identified substantial evidence, including two medical opinions, supporting his determination that no such absenteeism limitation should be included in the RFC.  Thus, the Court finds no error in the ALJ's analysis of the medical opinions, and thereby finds no reason for remand.  The conflicting medical opinions alone do not justify a remand.

In challenging the ALJ's assessment of the medical opinion evidence, Plaintiff first labels the ALJ's consistency analyses as boilerplate and non-specific to the extent they reference Plaintiff's improvement with treatment, normal mental status examinations, and activities of daily living.  (Pl.'s Mem. at 10.)  But as discussed above, the ALJ's decision previously detailed the record evidence falling under each category.  (R. at 18-20.)  He did not need to repeat that level of detail in his analysis of the medical opinion evidence which came only a few pages later.  *Todd A. v Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021) (finding that the ALJ's opinion must be read as a whole).  Based on the ALJ's detailed discussions of those categories in connection with the RFC determination, the Court concludes that the ALJ's consistency analyses complied with applicable legal standards and built the logical bridge needed to trace the ALJ's path of reasoning and permit meaningful review.  *See Monroe v. Colvin*, 862 F.2d 176, 189 (4th Cir. 2016) (finding that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion").

Next, Plaintiff contends that the ALJ viewed the medical opinion evidence "in a vacuum" rather than as a whole, and discredited four opinions without attempting to reconcile the fact that

they were consistent with one another.  (Pl.'s Mem. at 7; Pl.'s Reply at 2.)  Far from considering medical opinion evidence in a vacuum, the decision shows that the ALJ properly considered such opinion evidence alongside Plaintiff's medical record, including treatment records, clinical findings, Plaintiff's testimony and function reports, and other medical opinion evidence.  (R. at 20-22.)  The ALJ acknowledged the opinions that included an absenteeism limitation, found them unpersuasive, and explained his reasoning and supporting evidence for the same.  (R. at 20-22.)  While Plaintiff faults the ALJ for not discussing the consistency between the four opinions with absenteeism limitations, the Court does not find this surprising.  The ALJ found the absenteeism limitations not persuasive and inconsistent with the other record evidence.  The ALJ also noted their inconsistency with persuasive opinion evidence containing no absenteeism limitations.

In the end, the medical opinion evidence provided conflicting recommendations regarding an absenteeism limitation.  Even though more opinions included some form of absenteeism limitation that not, the ALJ is not required to side with the majority.  Instead, controlling legal standards require the ALJ to consider the persuasiveness of the opinion evidence, including by assessing each opinion's supportability and consistency.  The ALJ did that here.  Because the ALJ explained his basis for finding the absenteeism limitations unpersuasive, he complied with the regulations.  It is not the Court's position to reweigh this conflicting evidence.  *See Hancock*, 667 F.3d at 472.  Thus, the Court finds that the ALJ applied proper legal standards in evaluating the opinion evidence and that the RFC determination is substantially supported by the evidence.

## V.   CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 20) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge David J. Novak and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: February 12, 2024

25